UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOHN MAHON, SHELBY MAHON and
PAUL MAHON,

        Plaintiff,

-vs-                                            Case No.  5:04-cv-49-Oc-10GRJ

U.S. DEPARTMENT OF AGRICULTURE,

        Defendant.
_____/

# O R D E R

This appeal from an administrative agency's final decision is before the Court for consideration of the Plaintiff's Motion for Summary Judgment (Doc. 32), to which the agency has responded (Doc. 36). The motion is ripe for review and the Court concludes that summary judgment it is due to be entered in favor of the agency and the agency's decision is due to be affirmed.

## **Background**[1]

In January 2001, the Plaintiffs filed applications for disaster assistance under the Florida Nursery Program, a federally funded program for disaster relief established by the Defendant, the United States Department of Agriculture (USDA or agency),

---

[1] The record for case number 2002S000917 involving John and Shelby Mahon is referred to herein as R.917, and the record for case number 2002S000920 involving Paul Mahon is referred to herein as R. 920.

pursuant to 7 C.F.R. § 1480 *et seq.*[2] The Plaintiffs applied for disaster assistance because uninsured plants in their nursery suffered freeze damage in November and December of 2000.[3]

On November 9, 2001, the Lake County Committee of the USDA denied the Plaintiffs' applications for disaster relief on the grounds that the Plaintiffs were ineligible for payment because they were not operating as a "commercial nursery" at the time of the disaster and because the Plaintiffs had "not followed best management practices."[4] Specifically, the Committee concluded that when the Plaintiffs lost their plants to a freeze, the Plaintiffs had not renewed their certificate of registration, which was required under Florida law for a nursery to sell or distribute nursery stock in Florida. Therefore, the Plaintiffs' nursery did not meet the "eligibility criteria for a commercial nursery operation."[5] In addition, the County Committee concluded that the Plaintiffs did not follow "best management practices" because "the amount of inventory submitted [as destroyed and eligible for disaster relief] was in excess of the amount of land available

---

[2] R.917 pg. 3-8. Paul Mahon's application for benefits is not included in the record, however the fact that he applied for benefits is easily inferred from the documents that are included in the record.

[3] R. 917 pg. 3-20.

[4] R. 917 pg. 1204-1206; R. 920 pg. 76-79. The letters denying the Plaintiffs' applications for benefits are stamped received, November 13, 2001.

[5] R. 917 pg. 1204.

for growing this crop" and the Plaintiffs employed "growing liners without a greenhouse."[6]

On May 25, 2002, Plaintiff Paul Mahon's application for disaster relief was denied for a second time for the same reasons.[7]

*A. Paul Mahon's Appellate Proceedings*

On December 5, 2001, Plaintiff Paul Mahon requested to exercise his right to mediation.[8] After mediation reached an impasse, Paul Mahon's attorney requested an appeal on May 29, 2002,[9] and again on June 7, 2002.[10] Paul Mahon filed a "Notice of Appeal" personally signed by him on June 14, 2002.[11]

The National Appeals Division of the USDA initially denied Paul Mahon's appeal as untimely – the National Appeals Division contended that his appeal was due to be filed within 10 days of April 25, 2002, the date upon which mediation concluded.[12]

---

[6] R. 917 pg. 1205.

[7] R. 920 pg. 73-74.

[8] R. 920, p. 31-35.

[9] R. 920 pg. 51.

[10] R. 920 pg. 75.

[11] R. 920 pg. 68-69. Paul Mahon's Notice of Appeal is considered filed on June 14, 2002 rather than June 13, 2002 because June 14th is the date on the postmark. See 7 C.F.R. § 11.14(a).

[12] R. 920 pg. 65-66.

On June 20, 2002, Paul Mahon objected to the dismissal of his appeal because he was not notified that the mediation had reached an impasse until May 25, 2002 and there was never an agreement to have impasse declared on April 25, 2002.[13] In fact, the record reflects that the Florida Agricultural Mediation Service considered the mediation involving Paul Mahon to reach an impasse on May 28, 2002.[14]

On July 9, 2002, the National Appeals Division again dismissed Paul Mahon's appeal because regardless of whether the mediation was concluded on April 25, 2002 or May 28, 2002, Paul Mahon's "personally signed" appeal, as required by agency regulations, was postmarked June 14, 2002, more than 10 days after the latest date the mediation could have been concluded.[15]

On August 6, 2002, and again on September 3, 2002, Paul Mahon attempted to have his appeal reinstated as timely.[16] His requests were denied on September 9, 2002.[17]

---

[13]   R. 920 pg. 61.

[14]   R. 920, pg. 5.

[15]   R. 920 pg. 56-57.

[16]   R. 920 pg. 26-29, 4-5.

[17]   R. 920 pg. 1-3.

*B. John and Shelby Mahon's Appellate Proceedings*

John and Shelby Mahon filed a Notice of Appeal with the National Appeals Division on June 13, 2002.[18]

An evidentiary hearing was conducted on November 16, 2002.[19] Thereafter, on December 4, 2002, the hearing officer entered an "Appeal Determination," ruling in favor of John and Shelby Mahon and instructing the USDA to pay the loss as set forth in their application.[20] In support of his determination, the hearing officer reasoned that "other nurseries located in [John and Shelby Mahon's] County of residence and other Counties in the State, received benefits from the agency although those producers were late in paying the required License Fee to the State."[21] The hearing officer concluded that the agency's decision to deny disaster relief to John and Shelby Mahon because their license to sell plants had expired while granting relief others in a similar situation was arbitrary and contrary to law.[22] According to the hearing officer, the agency "must provide assistance to all producers equally."[23] In addition, the hearing officer reasoned that "the agency's use of Florida Statutes as one of the basis for denying [John and

---

[18]  R. 917 pg. 663-664.

[19]  R. 917 pg. 688.

[20]  R. 917 pg. 688-701.

[21]  R. 917 pg. 693.

[22]  Id.

[23]  Id.

Shelby Mahon's] CDP benefits is not in accordance to the standards established by federal published regulations."[24] Stated another way, the agency's decision should be based on federal statutes and regulations, not a Florida statute. Lastly, the hearing officer concluded that the agency's determination that John and Shelby Mahon did not meet the definition of "best management practices" was erroneous.[25] In particular, the hearing officer concluded that federal regulations did not impose a specific requirement upon a producer to have a greenhouse to grow liners, rather the producer must have some type of cover for the winter months, and John and Shelby Mahon used such a cover.[26]

On December 27, 2002, an administrator for the USDA requested a review by the director of the National Appeals Division of the December 4, 2002 Appeal Determination.[27]

The director entered his "Director Review Determination" on January 22, 2003, which reversed the hearing officer's determination.[28] The director concluded that John

---

[24] Id.

[25] R. 917 pg. 696. The hearing officer determined that the issue relating to whether the inventory submitted by John and Shelby Mahon in their application for benefits was in excess of the land available for growing the crop was moot since the parties agreed there was no evidence in the record to support such a claim. Id.

[26] R. 917 pg. 696.

[27] R. 917 pg. 1459-1464.

[28] R. 917 pg. 1417-1421.

and Shelby Mahon's request for disaster relief was appropriately denied because they "did not provide adequate freeze protection for their container grown nursery crops" as required by federal regulations.[29]

On February 7, 2003, John and Shelby Mahon requested reconsideration of the "Director's Review Determination."[30] Thereafter, on August 15, 2003, the director issued a "Revised Director Review Determination."[31] In the revised determination, the deputy director, who was delegated the authority to make determinations on requests for reconsideration, concluded that the director's original "determination was based on a material fact that was in error."[32] The deputy director therefore conducted a *de novo* review of the procedural and regulatory issues raised by Paul and Shelly Mahon and concluded that the hearing officer's decision must be reversed.[33]

With respect to the procedural matters before the deputy director, he concluded that the administrator's appeal of the hearing officer's decision was timely because it was filed within 15 business days after the agency received the hearing officer's

---

[29] R. 917 pg. 1420.

[30] R. 917 pg. 1407-1414.

[31] R. 917 pg. 1481-1491.

[32] R. 917 pg. 1481.

[33] Id.

decision.[34] Additionally, the deputy director rejected John and Shelby's Mahon argument that the hearing officer's decision should be reinstated because the director did not issue a final determination within 10 business days after the director received the administrator's request for review.[35] The deputy director reasoned that the statute and regulations did not require dismissal of a case for failure to meet the 10 day requirement, and it was "settled law that, in the absence of such a deadline, courts do not impose a coercive sanction such as that proposed by [John and Shelby Mahon]."[36] Lastly, the deputy director also concluded that there was no basis in statute or regulation which would require reinstatement of the hearing officer's decision because the deputy director failed to issue his revised determination within the time period provided by the regulations.[37]

With respect to the substantive issues before the deputy director, he concluded that the record did not support the agency's decision to deny disaster relief John and Shelby Mahon on the grounds that their loss was due poor farming practices.[38] However, the deputy director decided that the agency properly denied disaster relief to John and Shelby Mahon because they were not operating as a commercial nursery at

---

[34] R. 917 pg. 1484.

[35] Id.

[36] Id.

[37] Id.

[38] R. 917 pg. 1486.

the time of their loss.[39]  The deputy director reasoned that federal regulations limited disaster relief "ornamental nursery crops that were grown in a container or controlled environment <u>for commercial sale</u> on property owned or leased by the producer," and since John and Shelby Mahon were not certified as a commercial nursery under Florida law, and since their crops could not be legally sold under Florida law without such a certification on the dates of their loss, disaster benefits were properly denied.[40]

On September 9, 2003, John and Shelby Mahon filed their "Request for Reconsideration of the Director's Revised Review."[41]  Their request was denied on October 17, 2003.[42]

**Standard**

Pursuant to 5 U.S.C. § 706(2), in reviewing an agency's action, the Court must hold unlawful and set aside an agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, unconstitutional, in excess of statutory authority, without observance of procedure as required by law, unsupported by substantial evidence, or unwarranted by the facts to the extent that the facts are subject to trial *de novo* by the reviewing court.

---

[39]   R. 917 pg. 1487.

[40]   R. 917 pg. 1487-1488 (emphasis in original).

[41]   R. 917 pg. 1505-1511.

[42]   R. 917 pg. 1519-1521.

**Discussion**

*A. Dismissal of Paul Mahon's Appeal as Untimely*

Pursuant to 7. C.F.R. § 11.6(b)(1), once Paul Mahon received notice that his application for disaster relief was denied, he had 30 days to appeal the adverse decision.  However, since Paul Mahon requested mediation prior to filing an appeal, the 30-day period was tolled and he had the balance of the days remaining in that period to file an appeal after mediation was concluded.[43]

According to the record, Paul Mahon received notice that his application was denied on November 13, 2001.  On December 5, 2001, or 22 calendar days later,[44] Paul Mahon gave notice to the agency that he intended to exercise his right to mediation.  Accordingly, the 30-day period was tolled and he had 8 days after mediation concluded to file an appeal.[45]  Since mediation reached an impasse on May 28, 2002, Paul Mahon had 8 days, or until June 5, 2002, to submit an appeal to the agency.  Before his time to appeal expired, Paul Mahon's attorney requested an appeal on May 29, 2002, but the request for an appeal was not personally signed by Paul Mahon.

---

[43]    See 7 C.F.R. § 11.5(c)(1).

[44]    Pursuant to 7 C.F.R. § 11.1, "[d]ays means calendar days unless otherwise specified."

[45]    The agency provided Paul Mahon with 7 days in addition to 30 days allowed by regulation to file his appeal to account for "delivery time."  See R. 920 pg. 65.  This 7 day delivery time does not appear to be contemplated by the regulations, therefore the Court does not use this time in its calculations.  See 7 C.F.R. § § 11.1, 11.14.

Paul Mahon claims that his appeal was timely filed on May 29, 2002 and that there is no "personal signature" requirement which makes his May 29th appeal defective. This argument is without merit. 7 C.F.R. § 11.6(b), entitled "Appeals of adverse decisions," provides the following procedure for requesting an appeal from an adverse agency decision:

> (1) To obtain a hearing under § 11.8, a participant *personally* must request such hearing not later than 30 days after the date on which the participant first received notice of the adverse decision or after the date on which the participant receives notice of the Director's determination that a decision is appealable. . .
>
> (2) A request for a hearing *shall be in writing and personally signed by the participant*, and shall include a copy of the adverse decision to be reviewed, if available, along with a brief statement of the participant's reasons for believing that the decision, or the agency's failure to act, was wrong. The participant also shall send a copy of the request for a hearing to the agency, and may send a copy of the adverse decision to be reviewed to the agency, but failure to do either will not constitute grounds for dismissal of the appeal. Instead of a hearing, the participant may request a record review.[46]

Since § 11.6(b) requires a personally signed request within 30 days to appeal an adverse agency decision, and since it is undisputed that no such personally signed request was received by the agency within the 30-day window which applied to Paul

---

[46] (emphasis added). Paul Mahon claims that this section "never came into play" because he never requested a "hearing." However, the regulations, when read as whole, clearly contemplate § 11.6(b) as the sole avenue for appealing an agency's adverse decision. See, e.g., 7 C.F.R. § 11.5(c)(1) which provides "the participant stops the running of the 30-day period during which a participant may appeal to [National Appeals Division] under § 11.6(b)(1) . . ."
   Paul Mahon also contends that 7 C.F.R. § 11.6(a) provides the procedures to appeal an agency's adverse decision, however this section only applies to participants who wish to appeal "a determination from an agency that an agency decision is not appealable." And even if § 11.6(a) did apply, this section also requires the request to be personally signed.

Mahon, the Court concludes that Paul Mahon failed to exhaust the administrative remedies available to him by not filing a timely administrative appeal, therefore this Court has no jurisdiction to further review his claims.[47]

*B. John and Shelby Mahon's Appeal*

The sole issue before the Court on John and Shelby Mahon's appeal involves the interpretation of the agency's regulation – specifically, whether John and Shelby Mahon, who were not registered to sell nursery crops and therefore prohibited under state law from selling such crops in the state,[48] are eligible for disaster relief benefits when such benefits are expressly limited by agency regulations to nursery crops grown for "commercial sale."

John and Shelby Mahon argue that federal regulations did not require them to have a certificate of registration with the State of Florida to be considered an eligible "commercial" producer and to receive benefits from the agency, and that they should not be denied benefits when others who did not have a certificate received such

---

[47] See Counts v. American Gen. Life and Accident Ins. Co., 111 F.3d 105, 108 (11th Cir. 1997) (finding in favor of the Defendant in an ERISA action where the Plaintiff failed to exhaust administrative remedies available by filing an appeal with the agency before suing in federal court); Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005) (holding that a prisoner's grievance filed against prison officials out-of-time and without good cause was not sufficient to exhaust his administrative remedies for purposes of the Prison Litigation Reform Act's exhaustion requirement).

[48] It is undisputed that John and Shelby Mahon did not have a current Florida certificate of registration at the time they lost their crops to freeze damage. What is disputed is what this fact means – does it mean that John and Shelby Mahon were "commercial" producers or not? This is a question of law which is appropriate for the Court to decide on summary judgment.

benefits.  In response, the USDA argues that its interpretation of the term "commercial" is reasonable, therefore the Court should defer to the USDA's interpretation and affirm its decision to deny benefits to John and Shelby Mahon who were not "commercial" producers at the time their crop was damaged by the freeze.

In interpreting a regulation administered by an agency, the Court applies a two-part process.[49]  First, if congressional intent is clear, then the Court and the agency must give effect to the unambiguously expressed intent of Congress.[50]  However, where the statute or regulation is silent or ambiguous with respect to the particular issue, the Court is obligated to defer to the agency's interpretation of the statute or regulation if that interpretation is reasonable.[51]  "An agency's interpretation is reasonable and controlling unless it is arbitrary, capricious, or manifestly contrary to the statute."[52]  And when an agency is interpreting its own regulations, its interpretation is entitled to "great deference."[53]

In this case, Congress has provided no guidance as to what the term "commercial sale" means, therefore the Court is required to defer the agency's interpretation of the

---

[49]  Cadet v. Bulger, 377 F.3d 1173, 1185 (11th Cir. 2004).

[50]  Id.

[51]  Id.

[52]  Id. (internal quotations omitted).

[53]  Id. at 1186; see also Brennan v. S. Contractors Serv., 492 F.2d 498, 501 (5th Cir. 1974) (holding that Secretary of Labor's interpretation of a regulation promulgated under Occupational Safety and Health Act was entitled to "great weight").

term so long as it reasonable.  The Court concludes that the agency's interpretation of the term is reasonable, therefore the agency's decision is due to be affirmed.

7 C.F.R. § 1480 *et seq.* sets forth the terms and conditions for the 2001 and 2002 Crop Disaster Program.[54]  The purpose of the program is to provide disaster assistance to producers who incurred losses due to disasters incurring in 2001 and 2002.[55] Specifically, 7 C.F.R. § 1480.4(a) provides that "[p]roducers in the United States will be eligible to receive disaster benefits under this part only if they have suffered losses of eligible crops in 2001 or 2002 as a result of a disaster or related condition. . ." For ornamental nursery crops, "disaster benefits . . . are limited to ornamental nursery crops that were grown in a container or controlled environment for commercial sale on property owned or leased by the producer, and cared for and managed using good nursery growing practices."[56]

The agency denied disaster relief benefits, in part, because the agency concluded that John and Shelby Mahon's nursery crops were not for "commercial sale." Specifically, since John and Shelby Mahon were not registered with the State of Florida, as required by Fla. Stat. § 581.131,[57] and were prohibited from selling their plants

---

[54]    7 C.F.R. § 1480.1.

[55]    Id.

[56]    7 C.F.R. § 1480.18 (emphasis added).

[57]    Fla. Stat. § 581.131(1) provides that "[b]efore any nurseryman shall sell or distribute, or offer for sale or for distribution, any nursery stock in this state, she or he shall apply to the
(continued...)

without a registration under Florida law,[58] the agency concluded that their crops were not for "commercial sale."

The Court cannot say that the agency's interpretation of the regulation is unreasonable or contrary to law. Although federal regulations do not require producers to be registered or licensed by a state to sell nursery crops to qualify for disaster relief, the regulations also do not define "commercial sale" and the agency's interpretation of the term is entitled to deference. Further, it is reasonable to limit the term "commercial sale" to those sales which are legal, or to those producers who are properly registered and lawfully selling nursery crops under Florida law. Lastly, although it may seem unfair to John and Shelby Mahon that the agency provided benefits to other producers who did not have valid certificates under state law, there is no evidence that the agency knew that these producers did not have a certificate and granted them benefits

---

[57](...continued)
director of the division, on forms supplied by the division, for a certificate of registration."

[58]   Fla. Stat. § 581.121 provides "[i]t is unlawful for any nurseryman, stock dealer, agent, or plant broker to sell, give away, transfer, move or cause to be moved, carry, ship, or deliver for carriage or shipment any nursery stock except in compliance with the provisions of this chapter and the rules made pursuant to law."

anyway,[59] thus the Court cannot conclude on these grounds alone that the agency's actions were unreasonable and contrary to law.

## Conclusion

Accordingly, upon due consideration, it is ordered that:

(1) the Plaintiffs' Motion for Summary Judgment is DENIED;

(2) since there are no genuine issues of material fact, summary judgment is GRANTED in favor of the Defendant;

(3) the Defendant's decision to deny disaster relief benefits to the Plaintiffs is AFFIRMED; and

(4) the Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file in this matter.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 7th day of April, 2006.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record

---

[59] The hearing officer stated in his Appeal Determination that witnesses testified that they "obtained benefits from the agency for the same crop-year in the same County; and that the agency never asked them if they were certified by the State." R. 917 pg. 692. In addition, John and Shelby Mahon admit that there was no evidence produced at the hearing which showed whether the agency had any knowledge about other producers who received benefits and were not certified. R. 917 pg. 1508.